ACCEPTED
03-14-00095-CR
5331588
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/18/2015 9:05:18 PM
JEFFREY D. KYLE
CLERK

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/18/2015 9:05:18 PM
JEFFREY D. KYLE
Clerk

# COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

———————————————————

## CASE NO.
## 03-14-00095-CR

———————————————

## CHARLES G. VILLARREAL

## VS.

## THE STATE OF TEXAS

———————————————————

## APPEAL FROM THE 433rd DISTRICT COURT
## COMAL COUNTY, TEXAS

———————————————

## BRIEF OF STATE-APPELLEE

———————————————


**ORAL ARGUMENT**
**REQUESTED**

**CHARI L. KELLY**
**Texas Bar. No. 24057939**
**Comal County Criminal**
**District Attorney's Office**
**150 N. Seguin Ave., Suite 307**
**New Braunfels, Texas 78130**
**kellyc@co.comal.tx.us**
**(830) 221-1300**
**(830) 608-2008 (facsimile)**

**Attorney for State-Appellee**

# IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Trial Judge:** | The Honorable Dib W. Waldrip<br>District Judge of the 433rd District Court of<br>Comal County |
| **State – Appellee:** | State of Texas |
| **Trial Counsel and<br>Appellate Counsel:** | Chari L. Kelly<br>Comal County Criminal<br>District Attorney's Office<br>150 N. Seguin Avenue, Suite 307<br>New Braunfels, Texas 78130 |
| **Defendant – Appellant:** | Charles Villarreal |
| **Trial Counsel and<br>Appellate Counsel:** | Atanacio Campos<br>496 S. Castell Ave.<br>New Braunfels, Texas 78130 |
| **Trial Counsel:** | Sarah L. Dixon<br>496 S. Castell Ave.<br>New Braunfels, Texas 78130 |

# TABLE OF CONTENTS

IDENTITIES OF INTERESTED PARTIES ........................................................... 2

TABLE OF CONTENTS................................................................................. 3

TABLE OF AUTHORITIES ........................................................................... 5

STATEMENT OF THE CASE......................................................................... 8

ISSUES PRESENTED.................................................................................... 9

STATEMENT OF FACTS .............................................................................10

SUMMARY OF THE ARGUMENT .......................................................................17

ARGUMENT ..................................................................................................20

I.   IT WAS NOT ERROR TO ADMIT THE TESTIMONY OF CRYSTAL ANN DESCRIBING PRIOR ACTS OF ABUSE SUFFERED AT THE HANDS OF APPELLANT AS IT WAS ADMISSABLE UNDER TEX. CODE OF CRIM. PROC. ART. 38.37........................................................20

    A. *Applicable Statues and Standard of Review* ........................................20

    B. *The trial court did not abuse its discretion because Appellant had actual notice of prior abuse between Appellant and Crystal Ann* .......23

    C. *Appellant waived error by failing to ask for a continuance and a remand would yield the same result* ......................................................26

    D. *Even assuming error, admission of the evidence was not "injurious" as it did not affect Appellant's trial strategy* ......................................29

II.  THE EVIDENCE WAS SUFFICIENT TO UPHOLD APPELLANT'S CONVICTION FOR AGGRAVATED SEXUAL ASSAULT OF A CHILD ..................................................................................................................33

    A. *Standard of Review* ............................................................................33

B. *Deference to children's testimony has long been recognized by our courts* .......................................................................................35

C. *The testimony of Crystal Ann, her mother, and Appellant's admissions are sufficient to uphold a conviction for Aggravated Sexual Assault of a Child* .......................................................................................37

III.    APPELLANT CANNOT RAISE AN ADDITIONAL CLAIM OF LEGAL AND FACTUAL SUFFICIENCY BASED ON THE DENIAL OF A DIRECTED VERDICT ........................................................................40

PRAYER........................................................................................................42

CERTIFICATE OF SERVICE .......................................................................43

CERTIFICATE OF COMPLIANCE ...............................................................44

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page No.**

*Burgess v. State*, 02-12-00407-CR, 2014 WL 70090  (Tex. App.
—Fort Worth Jan. 9, 2014), *reh'g overruled* (Feb. 6, 2014),
*petition for discretionary review refused* (Aug. 20, 2014) .....................................27

*Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997) .........................................29

*Cook v. State*, 858 S.W.2d 467 (Tex. Crim. App. 1993) ........................................41

*Ervin v. State*, 331 S.W.3d 49 (Tex. App.—Houston [1st Dist.]
2010, pet. ref'd) ..............................................................................................33

*Garcia v. State,* 563 S.W.2d 925 (Tex. Crim. App. 1978) .....................................36

*Guajardo v. State,* 176 S.W.3d 402 (Tex. App.—Houston
[1st Dist.] 2004, pet. ref'd) .................................................................................35

*Hammock v. State*, 46 S.W.3d 889 (Tex. Crim. App. 2001) .................................31

*Hayden v. State*, 66 S.W.3d 269 (Tex. Crim. App. 2001) .........................22, 23, 24

*Head v. State*, 2013 WL1831576 (Tex. App.—Austin 2013, no
pet.) (mem. op. not designated for publication) ...................................22, 24, 26, 30

*Hernandez v. State*, 176 S.W.3d 821 (Tex. Crim. App. 2005) .........................29, 30

*Jackson v. Virginia*, 443 U.S. 307 (1979) .............................................................34

*Kiffe v. State*, 361 S.W.3d 104 (Tex. App.—Houston [1st Dist.]
2011, pet. ref'd) ...................................................................................33, 34, 40

*King v. State*, 953 S.W.2d 266 (Tex. Crim. App. 1997) ........................................29

*Koffel v. State,* 710 S.W.2d 796 (Tex. App.—Fort Worth 1986,
pet. ref'd) ...................................................................................................26, 27

*Lane v. State*, 174 S.W.3d 376 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ...................................................................................36

*Lindley v. State,* 635 S.W.2d 541, 544 (Tex. Crim. App. 1982) .......................26, 27

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009) ......................................35

*Margraves v. State*, 34 S.W.3d 912 (Tex. Crim. App. 2000) ...........................35, 40

*Marshall v. State,* 210 S.W.3d 618 (Tex. Crim. App. 2006) .................................36

*Martin v. State*, 176 S.W.3d 887 (Tex. App.—Fort Worth 2005, no pet.) .............27

*McDonald v. State*, 179 S.W.3d 571 (Tex. Crim. App. 2005) .........................23, 26

*Moffatt v. Sydnor*, 13 Tex. 628, 630 (Tex. 1855) ....................................................28

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990) ............................22

*Newby v. State*, 252 S.W.3d 431 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ...............................................................................35, 36

*Prible v. State,* 175 S.W.3d 724 (Tex. Crim. App. 2005) .......................................35

*Ramos v. State*, 245 S.W.3d 410 (Tex. Crim. App. 2008) ......................................22

*Ransom v. State*, 920 S.W.2d 288 (Tex. Crim. App. 1994) ....................................22

*Roethel v. State*, 80 S.W.3d 276 (Tex. App.—Austin 2002, no pet.) .....................30

*Villalon v. State,* 791 S.W.2d 130 (Tex. Crim. App. 1990) ...................................36

*Williams v. State*, 937 S.W.2d 479 (Tex. Crim. App. 1996) ..................................41

**Statutes and Other Authority** **Page No.**

Tex. Code of Crim. Proc. art. 37.07(West 2013)......................................................14

Tex. Code of Crim. Proc. art. 38.22 (West 2013)....................................................14

Tex. Code of Crim. Proc. art. 38.37 (West 2011).........................................21, 22, 26

Tex. Code of Crim. Proc. art. 38.37 (West 2013)...............................................*passim*

Tex. Code of Crim. Proc. art. 57.01 (West 2013)....................................................10

Tex. Penal Code §22.021 (Aggravated Sexual Assault of a Child) .........................8

Tex. Rule App. Proc. 44.2(b) ...................................................................................29

Tex. Rule of Evid. 105 ..............................................................................................31

Tex. Rule of Evid. 404 .......................................................................................*passim*

Tex. Rule of Evid. 609 ..............................................................................................15

## STATEMENT OF THE CASE

Appellant was indicted by the Grand Jury in a single count indictment of Aggravated Sexual Assault of a Child. (Tex. Pen. Code §22.021). R.R., Vol. 3, p. 57.

Following a jury trial, on January 15, 2014, the Appellant was found guilty of Aggravated Sexual Assault of a Child. R.R., Vol. 4, p. 48. Appellant elected the jury to assess punishment, which also occurred on January 15, 2014 after both sides presented testimony. *See generally id.* at 52-86. Appellant was sentenced to sixteen (16) years incarceration in the Institutional Division of the Texas Department of Criminal Justice and a $2,500 fine. *Id*. at 104.

The Appellant timely filed his Notice of Appeal.

## ISSUES PRESENTED

1. Can an Appellant argue on appeal that he failed to receive notice of prior bad acts or article 38.37 evidence when he was on actual notice nearly a year before trial?

2. Can an Appellant raise a sufficiency of the evidence claim on appeal when the victim testified that Appellant regularly abused her sexually from the time she was six until he moved out of the house one month after his eighteenth birthday (when the victim was eleven years old) and does not deny the conduct when approached by law enforcement?

## STATEMENT OF FACTS

Appellant is the second cousin of Crystal Ann[1] and they are six years apart in age R.R., Vol. 3, pp. 79, 106. Crystal Ann moved in with her parents, siblings, and Appellant when she was approximately four years old. *Id*. at 64, 102. Crystal Ann's mother, Elaine Zamarron, also raised Appellant from age ten until age eighteen years old because Appellant's mother could not care for him. *Id*. at 105.

Crystal Ann reported that Appellant started sexually abusing her at a very young age at the family's home on 207 East Torrey Street. *Id*. at 70. Crystal Ann testified that the first time she remembered Appellant touching her inappropriately was after she jumped on top of him with a sheet, and he started rubbing her sides and hips. *Id*. at 70-71. Crystal Ann testified that Appellant's behavior progressed, and he eventually placed his fingers in her vagina, and this occurred more than once. *Id*. at 72. Appellant also raped Crystal Ann more than three times, and she asked him to stop. *Id*. at 73-74. Crystal Ann also testified that Appellant placed his penis in Crystal Ann's mouth and would grab her hand and make her stroke his penis with her hand. *Id*. at 74-75. Ms. Zamarron noticed that Crystal Ann suddenly started having nightmares when the family lived at Torrey Street. *Id*. at 110. Crystal Ann testified that the family moved from their house on East Torrey

---

[1]While Appellant refers to the victim as "J.H." throughout his brief, the State will use the name alleged in the indictment, "Crystal Ann" as it is the victim's pseudonym and complies with Texas Code of Criminal Procedure section 57.01.

to their home on Rhine Road when she was approximately ten or eleven years old. *Id.* at 75-76.

Crystal Ann testified that the abuse continued in the house on Rhine Road, specifically that Appellant placed his finger in Crystal Ann's vagina and raped her repeatedly. *Id.* at 76-78. Appellant would usually assault Crystal Ann at night in her bedroom, next to Appellant's bedroom, or sometimes during the day when he was babysitting. *Id.* at 77. Crystal Ann testified that these things happened regularly, every month until the Appellant moved out. *Id.* at 78, 82-83, 95. Appellant moved out approximately one month after his eighteenth birthday. *Id.* at 77, 110. Crystal Ann specifically remembered that Appellant moved out "awhile" after his eighteenth birthday because Crystal Ann's mother, Ms. Zamarron, allowed Appellant to host a party at their home for his birthday.[2] *Id.* at 77-78. While living on Rhine Road, Ms. Zamarron also noticed that Crystal Ann started acting differently around Appellant, being aggressive, not wanting him around and asking why Ms. Zamarron was even taking care of him. *Id.* at 111. Ms. Zammarron also testified that Crystal Ann always wanted to be covered up, never wanted to do anything besides spend time with her younger sister, and behaved like a little hermit. *Id.* at 118.

---

[2] Appellant's birthday is February 19, 1990. R.R., Vol. 3, p. 186. Appellant's eighteenth birthday was on February 19, 2008.

Crystal Ann did not report the abuse for a long time as Appellant told her not to tell anyone and she felt scared that the abuse was her fault. *Id*. at 80. She eventually reported the abuse to a friend named Alexandria when she was a freshman in high school in 2010. *Id*. at 79. Subsequently, Crystal Ann attempted to tell her mother, Ms. Zammarron, about the abuse but initially could not muster the words and left the room crying. *Id*. at 80, 92. Instead, she asked Ms. Zamarron to call Alexandria who revealed Crystal Ann's abuse. *Id.* Crystal Ann later decided to pursue the case with law enforcement when she saw the Appellant at Target and learned that his girlfriend was pregnant with a baby girl, because Crystal Ann "didn't want the same thing to happen to her." *Id*. at 81-82.

Ms. Zamarron also testified Appellant moved out of their home on Rhine Road approximately three weeks after his eighteenth birthday. *Id*. at 110. Ms. Zamarron testified that she learned of the abuse when Crystal Ann outcried to her friend Alexandria in 2010. *Id.* at 118. Ms. Zamarron immediately contacted the New Braunfels Police Department, however, Crystal Ann did not feel comfortable pursuing the case at that time. *Id*. at 114-115.

Detective Schroeder of the New Braunfels Police Department (NBPD) interviewed Appellant on November 2, 2012. *Id*. at 187. Detective Schroeder testified that Appellant was very elusive, missed three or four appointments for his interview, and it ultimately took nine months for the Appellant to be interviewed

by law enforcement. *Id*. at 186. The recording of this interview was introduced as State's Exhibit 6; R.R., Vol. 3, p. 192. During the interview Appellant did not deny the allegations, but said that he did not remember if he committed the acts, as he was abusing drugs and alcohol at that time in his life. *See generally* State's Exhibit 6; R.R., Vol. 3, p. 188. Appellant also stated "If I did hurt her on accident, I'm sorry." State's Exhibit 6; R.R., Vol. 4, p. 27.

Appellant was indicted in a single count indictment of Aggravated Sexual Assault of a Child on February 13, 2013. The indictment alleged that Appellant penetrated the female sexual organ of Crystal Ann, a child under the age of 14 years, with his fingers on or about March 1, 2008 (approximately ten days after Appellant's eighteenth birthday). Appellant's counsel was provided discovery on March 13, 2013, and signed a discovery acknowledgment form. *See* Court's Exhibit 1; R.R., Vol. 3, p. 53. The discovery included all of the NBPD reports in this case, which included a summary of Crystal Ann's initial statement to the Children's Advocacy Center (CAC) outlining all of the abuse she endured at the hands of Appellant, a summary of Ms. Zammarron's interview, as well as a summary of the Appellant's recorded interview with Detective Schroeder. R.R. Vol. 2, p. 188; R.R., Vol. 3, p. 8. Crystal Ann gave a second CAC interview where she also included a report of anal sex. *Id*. A summary of this outcry was not included in the NBPD report, but Appellant's Counsel was permitted to view both

13

videos in the Criminal District Attorney's Office. R.R. Vol. 2, p. 187. Appellant's counsel viewed the second CAC interview on December 31, 2013. R.R. Vol. 4, p. 50. The discovery acknowledgement form, Court's Exhibit 1, included following the language, as well as a reference to Texas Rule of Evidence 404(b)[3]:

> The State hereby gives notice in advance of trial of its intent to introduce evidence of the attached extraneous crimes conduct, convictions and bad acts as described by date and County in any of the attached material. In addition, each and every individual identified in the materials may be called as a witness for the State.

*See* Court's Exhibit 1; R.R. Vol. 2, pp. 186-187.

Appellant's first jury trial setting was set on August 27, 2013, however the case was reset. *See* I. Supp. On September 1, 2013, a new version of the Texas Code of Criminal Procedure article 38.37 went into effect, changing the use of prior bad acts of sex offenders at trial. On January 6, 2014 Appellant filed a Motion to Suppress any evidence of acts occurring before February 19, 2007, the Defendant's 17th birthday, as well as a Motion in Limine regarding all uncharged conduct.[4] R.R. Vol. 3, p. 10. In an abundance of caution, the State filed a "Notice of Intent to Enter Extraneous Offenses Crimes, Wrongs and Bad Acts" on January 8, 2014 citing notice under Texas Code of Criminal Procedure articles 37.07, 38.37

---

[3] The discovery acknowledgment form also references Texas Code of Criminal Procedure articles 37.07 and 38.22 and Texas Rule of Evidence 609(f). See Court's Exhibit 1; R.R. Vol. 3, p. 7.

[4] Appellant did not request notice under Texas Code of Criminal Procedure art. 38.37 or Texas Rule Evidence 404 for any of his trial settings.

14

and Texas Rules of Evidence 404 and 609(f). The trial of Appellant started on January 13, 2014.

At trial, Appellant urged his motion to suppress any evidence of acts that occurred before his seventeenth birthday. *See generally* R.R. Vol. 2, pp. 178-225; R.R. Vol. 3, pp. 6-13. Before ruling, and before opening statements, the trial court ordered the State to make a electronic copies of both of Crystal Ann's CAC interviews to allow the Appellant the opportunity to review and identify any allegations of abuse not referenced in the NBPD report, overnight. R.R. Vol. 2, pp. 222-224. The trial court ultimately ruled that Appellant was an actual notice of all the abuse outlined in the NBPD report, including abuse that occurred when Appellant was a juvenile, but kept out evidence of anal sex during the guilt-innocence phase of trial. R.R. Vol. 3, pp.10-12. Subsequently, the trial court conducted a hearing pursuant to Texas Code of Criminal Procedure article 38.37 on January 14, 2014 and found that the prior abuse evidence likely to be admitted at trial would be adequate to support a finding by the jury that Appellant committed the separate offenses beyond a reasonable doubt. *Id*. at 24-51. The trial court excluded other evidence, however, at a subsequent article 38.37 hearing on the same day, namely Crystal Ann's Sexual Assault Nurse Examiner's (SANE) report from 2001, as well as the testimony of Dr. Weinberg regarding Crystal Ann's contemporaneous diagnosis of a urinary tract infection (UTI). *Id*. at 156-57.

15

Finally, the trial court excluded a jail recording in which the Appellant relayed that he had a dream about Crystal Ann that turned into a sexual dream about his girlfriend while in jail. *Id.* at 214.

## SUMMARY OF THE ARGUMENT

Appellant argues in point of error one that the trial court committed error when it admitted testimony from the victim regarding the prior acts of sexual abuse suffered at the hands of Appellant, as he alleges notice of this abuse was not properly given under Texas Code of Criminal Procedure article 38.37. The trial court did not abuse its discretion in admitting this testimony because Appellant had actual notice of prior abuse between Appellant and Crystal Ann for nearly a year prior to trial. Specifically, Appellant's counsel signed a written acknowledgement, nine months prior to trial, which stated that the State gives "notice in advance of trial of its intent to introduce evidence of the attached extraneous crimes conduct, convictions and bad acts as described by date and County in any of the attached material" as well as a reference to Rule of Evidence 404(b). Attached to this material was a police report which summarized each of the acts that Crystal Ann was permitted to testify about during direct. In accordance with *Hayden v. State* the State is not required to provide "formalistic" written notice to comply with the Code. Additionally, Appellant waived error by failing to ask for a continuance at trial. If Appellant's conviction was reversed and remanded, a new trial would yield the same result and the prior acts would be admissible as Appellant could no longer claim lack of notice.

Even assuming error, admission of the evidence was not "injurious," as required by *Hernandez* and *Head* for reversal, as the Appellant did not articulate how this evidence impacted his trial strategy. Appellant's counsel vigorously cross-examined the victim, and her mother, both in front of the jury, and outside of their presence before proceeding with his examinations. Counsel was clearly prepared for the testimony. Point of error one should be overruled.

In his second point of error, Appellant argues that the evidence was not legally or factually sufficient to support his conviction of Aggravated Sexual Assault of a Child as Crystal Ann's testimony did not include specific dates of assault and was "self-contradictory." Deference to children's testimony has long been recognized by our courts and a conviction may be held sufficient on the testimony of a child victim alone. Crystal Ann's testimony was unequivocal— the Appellant sexually assaulted her monthly over a period of years at their home until approximately a month after his eighteenth birthday. Her mother confirmed the dates that Appellant lived with the family as well as when Appellant moved out. Appellant's own video-taped admissions, entered at trial, acknowledge "[i]f I did hurt her on accident, I'm sorry." In accordance with *Kiffe*, deference is to be given to the jury's evaluation of the credibility and weight of the evidence, and Appellant's point of error two should be overruled.

Finally, Appellant urges an additional factual and legal sufficiency claim as a third point of error, specifically that the trial court committed error by failing to grant his motion for directed verdict. A motion for directed verdict is also a challenge to the legal sufficiency of the evidence. As this is the same claim addressed in point of error two, it cannot be raised as a separate point of error. As Appellant does not distinguish any different facts or law in support of his sufficiency claim as to point of error number three, the State effectively addresses this claim in Section II. Appellant's point of error three should be overruled.

# ARGUMENT

## I. IT WAS NOT ERROR TO ADMIT THE TESTIMONY OF CRYSTAL ANN DESCRIBING PRIOR ACTS OF ABUSE SUFFERED AT THE HANDS OF APPELLANT AS IT WAS ADMISSABLE UNDER TEX. CODE CRIM. PROC. ART. 38.37

### A. *Applicable Statutes and Standard of Review*

Appellant claims in his first point of error that he was harmed by the trial court's admission of acts of sexual abuse committed by Appellant on Crystal Ann before his seventeenth birthday, as notice was not properly given pursuant to the newly amended Texas Code of Criminal Procedure article 38.37. Appellant did not dispute actual notice at trial, nor does he complain that the admission of the acts was improper for any other reason than lack of notice. *See* Appellant's Brief at 17-20. Article 38.37 provides in relevant part:

> Sec 1. (b) Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.
>
> . . .
>
> Sec. 2. (a) Subsection (b) applies only to the trial of a defendant for:
>
> . . .
>
> (E) Sections 22.021(a)(1)(B) and (2) (Aggravated Sexual Assault of a Child);
>
> . . .

20

(b) Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

Sec. 2-a. Before evidence described by Section 2 may be introduced, the trial judge must:

(1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and

(2) conduct a hearing out of the presence of the jury for that purpose.

Sec. 3. The state shall give the defendant notice of the state's intent to introduce in the case in chief evidence described by Section 1 or 2 not later than the 30th day before the date of the defendant's trial.

Sec. 4. This article does not limit the admissibility of evidence of extraneous crimes, wrongs, or acts under any other applicable law.

Tex. Code Crim. Proc. art. 38.37 (West 2013). While Section 1(b) was in effect at the time of Appellant's indictment, Sections 2, 2-a, and 3 did not come into effect until September 1, 2013, approximately four months prior to Appellant's trial date. The prior version of the statute did not allow for the introduction of extraneous acts to show action in conformity therewith as now permitted under Section 2(b). Texas Code Crim. Proc. art. 38.37 (West 2011). However, the prior version of the

21

statute also required the defense to make a request to trigger the State's obligation to provide notice:

> Sec. 3 On timely request by the defendant, the state shall give the defendant notice of the state's intent to introduce in the case in chief evidence described by Section 2 in the same manner as the state is required to give notice under Rule 404(b), Texas Rules of Evidence.

> Texas Code Crim. Proc. art. 38.37 (West 2011).

Generally, appellate courts review the admission or exclusion of evidence under an abuse of discretion standard. *Ramos v. State*, 245 S.W. 3d 410, 417-18 (Tex. Crim. App. 2008), *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994). Review of a trial court's ruling regarding as to whether the State provided reasonable notice of its intent to introduce extraneous-offense evidence is likewise reviewed under an abuse of discretion standard.[5] *Hayden v. State*, 66 S.W.3d 269, 271 (Tex. Crim. App. 2001). The test for abuse of discretion is whether the trial court, without reference to any guiding rules or principles, acted arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). "A trial court abuses its discretion only when its decision 'is so clearly wrong as to lie outside that zone within which reasonable persons might disagree.'" *Head v. State*, 2013 WL1831576 at *5 (Tex. App.—Austin 2013, no pet.) (mem. op. not

---

[5] While Appellant acknowledges the abuse of discretion standard in the admission or exclusion of evidence, he asserts there is presumptive error as "there was no discretion for the trial court to exercise." *See* Appellant's Brief at 19.

designated for publication) *citing McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

### B. The trial court did not abuse its discretion because Appellant had actual notice of prior abuse between Appellant and Crystal Ann.

The trial court did not abuse its discretion by admitting the prior sexual abuse of Crystal Ann at the hands of the Appellant, as Appellant was on actual notice of all of the admitted conduct for nine months prior to his trial. The Court of Criminal Appeals has held the State is not required to provide "formalistic" written notice of extrinsic acts in order to comply with the requirements of the Code of Criminal Procedure or Rules of Evidence, as long as actual notice is conveyed. *Hayden v. State*, 66 S.W.3d 269, 273 (Tex. Crim. App. 2001). In *Hayden v. State* the Court held that the timely delivery of witness statements to the defense, in response to a request for notice under Texas Rule of Evidence 404(b), was sufficient notice.

> *Because the purpose of Rule 404(b) notice is to prevent surprise*, we agree with the cases indicating that delivery to the defense of witness statements detailing extraneous offenses may, in an appropriate case, satisfy the notice requirements of Rule 404(b).
>
> . . .
>
> The prosecution is not required to make a *written* response concerning its intent, although this is certainly the recommended procedure. Although the better practice is for the prosecutor to state explicitly the intent to introduce extraneous offense evidence, the trial court did not abuse its discretion in concluding that delivery of witness statements

23

to the defense in this particular case provided appellant with reasonable notice.

*Id.* at 272-73 (emphasis added). The Court also noted that Appellant conceded actual notice. *Id.* at 272 ("[Appellant]did not dispute the State's claim that he had actual notice. Instead, his claim was that "discovery doesn't satisfy 404(b).").

Similarly, this Court held in *Head v. State* that even conversations between a prosecutor and defense counsel regarding extraneous-offense evidence could be considered sufficient notice. *Head v. State*, 2013 WL1831576 at *11 (Tex. App.—Austin 2013, no pet.) (mem. op. not designated for publication) ("On this record, we cannot conclude that the district court abused its discretion in finding that Head had reasonable notice of the extraneous offenses. Regarding the offenses . . . the district court could have impliedly found that although written notice was not provided ten days prior to trial, defense counsel was given reasonable notice of those offenses through multiple conversations with the prosecutor . . . more than ten days prior to trial.")

Appellant received actual notice of all of his alleged bad acts introduced at the guilt-innocence phase of trial nine months prior to trial. *See* Court's Exhibit 1; R.R. Vol. 2, p. 188; R.R., Vol. 3, pp. 8, 53. As discussed at length during the trial, the NBPD report contained a summary of all the sexual abuse that Crystal Ann was permitted to testify to at trial. R.R. Vol. 2, p. 188; R.R., Vol. 3, p. 8. When Appellant's counsel signed the discovery acknowledgment form attached to the

24

NBPD report he acknowledged that he received "notice in advance of trial of its intent to introduce evidence of the attached extraneous crimes conduct, convictions and bad acts as described by date and County in any of the attached material." (*See* Court's Exhibit 1; R.R. Vol. 2, pp. 186-187). Appellant's argument to the trial court the Appellant was caught unawares that this evidence could be used in guilt-innocence was unpersuasive as the notice also contained a reference to Texas Rule of Evidence 404(b) which applies to the guilt-innocence stage of trial. R.R. Vol. 3, pp. 10, 53. This notice, while not as "formalistic" as a separate written notice with "Article 38.37" typed on its header, still fits squarely within the notice scenarios acknowledged by this Court and the Court of Criminal Appeals. In fact, the one act of abuse that was not included the original NBPD report, and not attached to the discovery acknowledgement form, anal sex, was excluded by the trial court during the guilt-innocence phase of the trial.[6] R.R. Vol. 3, pp. 10-12.

Further, Appellant never requested notice under the prior version of Texas Code of Criminal Procedure article 38.37, triggered only by a defense request, or even notice under Texas Rules of Evidence 404. Even under the prior version of article 38.37, evidence of other crimes, wrongs, or acts committed by the Appellant against Crystal Ann would have been admissible for its bearing on relevant

---

[6] This evidence was permitted at sentencing, as the State faxed formal notice on January 6, 2014, and Appellant's counsel viewed this evidence, in the form of a CAC video, on December 31, 2013. R.R. Vol. 4, pp. 50-52.

matters, including: the state of mind of the Appellant and Crystal Ann, and the previous and subsequent relationship between appellant and Crystal Ann. *See* Texas Code Crim. Proc. art. 38.37 (West 2011). This effectively means that from March 13, 2013 until the law changed on September 1, 2013, Appellant knew that these acts could be used against him during the State's case-in-chief. Further demonstrating that Appellant was on notice is the fact that he filed a motion to suppress, specifically citing these other acts, prior to trial. This is proof positive that Appellant was on notice that the State intended to introduce these acts at trial. The trial court's admission of the prior abuse did not lie "outside the zone of reasonable disagreement" as contemplated by *Head* and *McDonald*.

Appellant was on notice of the prior acts of sexual abuse acts against his victim, Crystal Ann; the trial court did not abuse its discretion in admitting the acts, and point of error one should be overruled.

### C. Appellant waived error by failing to ask for a continuance and a remand would yield the same result.

On appeal, Appellant asserts that he was "surprised" by the prior abuse evidence, yet he made no request for a continuance at trial. *See* Appellant's Brief at 17-18. Alternatively, Appellant asserts that the State should have requested a motion for continuance. *Id*. at 19. Failure to request a continuance waives any error urged on appeal on the basis of surprise. *See Koffel v. State,* 710 S.W.2d 796, 802 (Tex. App.—Fort Worth 1986, pet. ref'd) (citing *Lindley v. State,* 635 S.W.2d

26

541, 544 (Tex. Crim. App. 1982)). In *Martin v. State*, the Fort Worth Court of Appeals held not only the a defendant's failure to request a continuance at trial to prepare for the admission of article 38.37 evidence waived the issue on appeal, but seven-day notice by the State was reasonable when the evidence was available twenty days before trial:

> We find nothing in the record to indicate that Martin requested a continuance. Having failed to do so, Martin has waived any complaint that he was surprised by the State's notice. Further, even if we assume that Martin preserved error, we cannot say that the trial court abused its discretion when it overruled his objections to the reasonableness of the State's notice because under the circumstances of this case, we believe that the trial court could have determined that seven days' notice was adequate and reasonable given that the State's file had been open to Martin's defense counsel since the return of the indictment and that at least twenty days before trial the State provided Martin's defense counsel with a copy of the videotaped interview between S.D. and CPS wherein S.D. sets forth her allegations against Martin. We overrule Martin's second and fifth issues.

*Martin v. State*, 176 S.W.3d 887, 900-01 (Tex. App.—Fort Worth 2005, no pet.) (internal citations omitted). *See also Burgess v. State*, 02-12-00407-CR, 2014 WL 70090, at *4-5 (Tex. App.—Fort Worth Jan. 9, 2014), *reh'g overruled* (Feb. 6, 2014), *petition for discretionary review refused* (Aug. 20, 2014) (Appellant waived issue of untimely notice under art. 38.37 for victim's testimony that she also "played strip Connect 4" with appellant as he failed to request a continuance during trial.).

27

Appellant was put on notice above and beyond the defendant in *Martin*. Not only did he receive the NBPD report outlining the prior abuse nine months before his trial, he knew enough about the misconduct to file a motion to suppress the evidence seven days prior to trial. Appellant's suggestion that the State should ask for a continuance when Appellant was "surprised" is misplaced. Appellant likely did not request a continuance because he was not surprised at trial—either way, the issue is waived on appeal. If Appellant is granted relief, the Court would effectively be reversing the trial court for its failure to grant a continuance *where Appellant failed to request one*. Upon retrial, Appellant could no longer claim lack of notice, and the evidence of the prior sexual abuse suffered by Crystal Ann at the hands of Appellant would be admissible at a subsequent trial pursuant to Texas Code of Criminal Procedure article 38.37. Furthermore, in light of the fact that Appellant had actual notice of the extraneous offenses nine months prior to the complained-of trial, it is evident that his strategy would be no different in the event of a reversal and remand. A retrial in which the same overwhelming evidence is introduced and the same strategy is pursued would inevitably lead to the same result, and would be an absurd waste of judicial resources. *Moffatt v. Sydnor*, 13 Tex. 628, 630 (Tex. 1855) ("it would be idle to reverse and remand the case for their correction, when it is evident the result upon another trial must be the same."). Appellant's point of error one should be overruled.

***D. Even assuming error, admission of the evidence was not "injurious"
as it did not affect Appellant's trial strategy.***

Other than federal constitutional errors labeled as structural by the United States Supreme Court, no error is categorically immune to a harmless error analysis. *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997). Further, Tex. Rule App. Proc 44.2(b) provides that "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." The harm standard under Rule 44.2(b) is whether the error in admitting the evidence "had a substantial and injurious effect or influence in determining the jury's verdict." *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Even assuming the trial court abused its discretion *arguendo*, any admission of this evidence did not have an injurious effect on the jury's verdict as Appellant cannot, and did not, articulate how the lack of notice would have impacted his trial strategy.

In *Hernandez v. State*, the Court of Criminal Appeals held that while the admission of six recorded statements of the defendant was error, as the State did not provide 404(b) notice of the extraneous offenses included in the recordings, this error did not have an injurious effect on the defendant as he was aware of their contents months before trial. 176 S.W.3d 821, 826 (Tex. Crim. App. 2005). The Court explained that since the defense could not articulate how the lack of notice impacted the defense's trial strategy, there was no "injurious" effect on the defendant:

29

[I]t strains credulity to think that this defendant in this case was not on notice that the State intended to use his six recorded statements as a part of its evidence or that he had not prepared to defend against their use. Obviously the State was aware of the tape recordings, had timely furnished appellant's counsel a copy of those recordings, and, considering how relevant they were to the capital murder charge, could be expected to use them at trial.

Further, appellant has failed to make any showing of how his defense strategy might have been different had the State explicitly notified him that it intended to offer the complete tape recordings at trial, or how his defense was "injuriously" affected by the State's failure to provide reasonable notice. Appellant notes that "[r]elying upon the [S]tate's notice is useful in giving the opponent the opportunity to investigate the extraneous acts, find witnesses to rebut the acts, and to develop evidence to mitigate them." Although that may be true, appellant makes no argument that, because of the State's failure to give him notice, he was unable to prepare his defense in this particular case. Surely, having been given the complete tape recordings, appellant's counsel listened to them and thus was in a position to develop evidence to mitigate their impact.

*Id.*

This Court, in *Head*, further discussed the harm analysis when assessing lack of notice by the State. 2013 WL1831576 at *12. "The harm analysis in this context focuses on whether the deficient notice resulted from prosecutorial bad faith or prevented the defendant from preparing for trial." *Id.* citing *Hernandez v. State*, 176 S.W.3d 821, 824–26 (Tex. Crim. App. 2005); *Roethel v. State*, 80 S.W.3d 276, 282 (Tex. App.—Austin 2002, no pet.).

Appellant makes no complaint that the State acted in bad faith. Additionally, the unusual circumstances of a substantive evidentiary rule changing

30

in between trial settings make this claim even less likely. Appellant, similar to *Hernandez* and *Head*, fails to articulate how the lack of notice affected his trial strategy. Appellant simply makes the sweeping statement that he "was harmed because he was unprepared." Appellant's Brief at 17. However, this claim is unsupported by the record. Appellant had copies of both of Crystal Ann's CAC videos before opening statements, and made no complaint that he was not provided enough notice to review them again and compare them to the NBPD report. Further, before any evidence of prior sexual abuse was admitted before the jury, and given the Appellant's alleged concerns regarding deficient notice, the State even offered to limit the use of this testimony to the two areas of the prior version of article 38.37: (1) the state of mind of the Appellant and Crystal Ann; and (2) the previous and subsequent relationship between the Appellant and Crystal Ann. R.R., Vol. 2, pp. 192-197. Appellant's counsel summarily rejected this proposed solution, arguing that *all* of the evidence of prior abuse should still be excluded for *all* purposes.[7] R.R., Vol. 2, p. 194 ("[T]he defense would prefer the State adhere to the letter of the law as of today's date and apply the law as it currently [exists].");

---

[7] Additionally, Appellant could have requested a limiting instruction contemporaneous with the admission of Crystal Ann's testimony under Rule of Evidence 105(a). As he did not request this instruction, even when offered by the State, Appellant has waived complaint of this issue on appeal. *Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001) (overruling Appellant's claim of error as he failed to request a limiting instruction as to victim's testimony regarding prior jail experiences when he first had the opportunity).

R.R., Vol. 3, pp. 6-7.

Additionally, the trial court conducted a hearing outside of the presence of the jury where he permitted Appellant's counsel to question Crystal Ann before she testified. *See* R.R., Vol. 3, pp. 28-32, 40-46, 49-51.[8]  Appellant's counsel was also permitted to cross-examine Crystal Ann's mother, Ms. Zammarron, outside the presence of the jury, after the State's direct examination and before proceeding with his cross-examination in front of the jurors.[9]  *See* R.R., Vol. 3, pp. 132-137. Additionally, Appellant's counsel vigorously cross-examined Crystal Ann, and her mother, at trial about the times and dates of the alleged offense and prior sexual abuse. *See generally* R.R., Vol. 3, pp. 84-97, 131-141, 167-177.  Appellant's counsel successfully argued for the exclusion of Crystal Ann's SANE in 2001, medical testimony from Dr. Weinberg regarding a prior diagnosis of a UTI, and a

---

[8] Appellant's counsel were also present when the trial court conducted its own *sua sponte* examination of Crystal Ann, outside of the jury's presence, where he asked if Crystal Ann had ever been abused by any other males, and specifically asked about her stepfather and older brother. *See* R.R., Vol. 3, pp. 27-28, 37-39, 47-49.

> THE COURT: Has [your stepfather] ever done anything to you that you didn't
> want to occur?
> CRYSTAL ANN: No, sir.
> THE COURT: Has any other male done anything to you besides what you said
> [Appellant] has done—
> CRYSTAL ANN: No, sir.
> THE COURT: —including your brother? He's never messed with you?
> CRYSTAL ANN: No.
> THE COURT: Okay. Anybody else?
> CRYSTAL ANN: No.

R.R., Vol. 3, pp. 48-49.

[9] Similarly, Appellant's counsel were present when the trial court conducted an examination of Ms. Zammarron, outside of the jury's presence.  R.R., Vol. 3, pp. 137-40.

jail call of the Appellant. *See* R.R., Vol. 3, pp. 157-159, 214. Finally, Appellant's counsel spent a majority of their closing argument discussing all of the alleged inconsistencies of Crystal Ann's and Ms. Zammarron's testimony, similar to the chart provided in Appellant's Brief. *See* R.R., Vol. 4, pp. 28-37; Appellant's Brief at 24-29. Appellant's counsel were clearly prepared for evidence of this prior sexual abuse to be admitted and incorporated it into their trial strategy. Any admission of this evidence, even absent formal notice, is not "injurious" to Appellant as required by *Hernandez*, and point of error one should be overruled.

## II. THE EVIDENCE WAS SUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR AGGRAVATED SEXUAL ASSAULT OF A CHILD

Appellant argues in point of error two that the evidence was both legally and factually insufficient to support his conviction.[10] *See* Appellant's Brief at 21-33.

### A. *Standard of Review*

After the decision of the Court of Criminal Appeals in *Brooks v. State*, Texas appellate courts review legal and factual sufficiency challenges in criminal cases using the same legal sufficiency standard of review. *Kiffe v. State*, 361 S.W.3d 104, 107 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)). Evidence is

---

[10] Appellant simply assets that the evidence was "insufficient" find that abuse occurred after Defendant turned seventeen.

only insufficient if, when considering all the evidence in the light most favorable to the verdict, "no rational factfinder could have found each essential element of the charged offense beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). While viewing the evidence in the light most favorable to the verdict, evidence can be insufficient in two circumstances: when the record contains "no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or when "the evidence conclusively establishes a reasonable doubt." *Id.* The evidence may also be insufficient when the acts alleged do not constitute the offense charged. *Id.* at 108.

Legal sufficiency review "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. at 319. Reviewing courts determine whether the necessary inferences are reasonable based on the "combined and cumulative force of the evidence when viewed in the light most favorable to the verdict." *Kiffe*, 361 S.W.3d at 108. Courts will treat direct and circumstantial evidence equally. *Id.* "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* Appellate courts will presume that the factfinder "resolved any conflicting inferences in favor of the verdict" and defer to that resolution. *Id.* The reviewing courts will also

defer to "the factfinder's evaluation of the credibility and the weight of the evidence." *Id.* The factfinder is entitled to accept some testimony and reject other testimony, in whole or in part. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), abrogated on other grounds by *Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009).

### B. Deference to children's testimony has long been recognized by our courts.

Appellant's arguments fail to acknowledge that the Courts of Appeals have long recognized that a sexual assault conviction may be sufficient solely based on the testimony of a child. The Fourteenth Court of Appeals, in *Newby v. State*, upheld a sexual assault conviction on factual sufficiency when the State's case primarily relied on a child victim's testimony, despite Newby's argument that the child victim lacked credibility. *Newby v. State*, 252 S.W.3d 431, 436-37 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) *citing Prible v. State,* 175 S.W.3d 724, 731 (Tex. Crim App. 2005) (the jury's verdict is only set aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met); *Guajardo v. State,* 176 S.W.3d 402, 404–05 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (finding the evidence factually sufficient despite appellant's argument that the State's case relied entirely on complaining witness's testimony and the complaining witness was not credible).

Courts give wide latitude to testimony given by child victims of sexual abuse. *See Villalon v. State,* 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (stating we cannot expect a child victim to testify with the same clarity and ability as mature, capable adults). In this case, the jury heard R.S.'s unambiguous testimony describing each of his sexual encounters with appellant. The jury is in the best position to evaluate the credibility of witnesses and the evidence, and we must afford due deference to its determination. *Marshall v. State,* 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). Further, there is no requirement that the victim's testimony be corroborated by medical or physical evidence. *See Garcia v. State,* 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (holding victim's testimony of penetration, standing alone, was sufficient).

*Newby*, 252 S.W.3d at 436-437.

The Court similarly upheld an aggravated sexual assault of a child conviction, noting that a child victim did not have to testify as to specific dates of assault in order to meet legal sufficiency:

The record also belies appellant's assertion that A.F. never testified about when these events occurred. A.F. testified appellant assaulted her many times and that the last assault occurred during October when she was nine years old. Ms. Ferrell testified that the assaults occurred in the latter part of October, 2002. Officer Valenta, who spoke with Ms. Ferrell and A.F. before executing the search warrant at appellant's apartment, said A.F. told him an assault occurred the weekend or week before Halloween. Appellant has not cited any contrary evidence, nor have we found contrary evidence in the record that is so strong the beyond-a-reasonable-doubt standard could not have been met. We conclude the evidence is also factually sufficient and overrule appellant's factual sufficiency challenges.

*Lane v. State*, 174 S.W.3d 376, 386-87 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (internal citations omitted).

The same latitude should be afforded Crystal Ann. She unequivocally testified that Appellant repeatedly sexually assaulted her, including placing his fingers inside of her vagina as charged, monthly, until he moved out after his eighteenth birthday. RR. Vol. 3, pp. 82-83. The fact that a child who was between six and eleven years old when she was repeatedly sexually assaulted cannot remember specific dates is not unreasonable and certainly acknowledged by our Courts of Appeals.

### C. The testimony of Crystal Ann, her mother, and Defendant's own admissions are sufficient to uphold a conviction for Aggravated Sexual Assault of a Child.

The evidence is sufficient to uphold Appellant's conviction of Aggravated Sexual Assault of a Child. As detailed in the Summary of Facts, Crystal Ann testified at great length regarding the sexual abuse suffered at the hands of Appellant, and further testified that this abuse took place during the relevant time period of February 19, 2007 (Appellant's seventeenth birthday) through March 1, 2008 (Appellant's approximate move out date). R.R., Vol. 3, pp. 78, 82-83, 95. Specifically, during Crystal Ann's testimony the following exchange between the State and Crystal Ann took place:

Q: I want to talk a little bit more about Rhine Road. And I know you said these things happened all throughout the time that [Appellant] was at Rhine Road. How often did they happen?

A: A lot.

Q:   A lot. So obviously much more than five times?

A:   Yes.

Q:   More than ten times?

A:   I'm not sure.

Q:   Okay. And was there a pattern? In other words, did they happen—if you look at how often that it happened, would you say it was every other month?

A:   No.

Q:   More than that or less than that?

A:   More.

Q:   Okay. Every month?

A:   Yes.

Q:   Okay. I'm going to write that on here. [on demonstrative exhibit 3] And did that happen up until the point he moved out?

A:   Yes.

Q:   And you already told us that he moved out after his 18th birthday party, right?

A:   Yes.

R.R. Vol. 3, pp. 82-83.[11]

---

[11] Crystal Ann also testified:

Q. While he was living with you in this house on Rhine Road, did he do these

38

The record does not support Appellant's repeated assertion that Crystal Ann denied abuse on Rhine Road occurring "more than ten times." *See* Appellant's Brief at 22. Crystal Ann testified that that she "wasn't sure" if the abuse occurred more than ten times, but that it occurred monthly. R.R. Vol. 3, pp. 82-83. Additionally, Appellant's claim that Crystal Ann's testimony is "self-contradictory" is also not supported by Appellant's Brief or the record. *See* Appellant's Brief at 30. As discussed in *Kiffe*, appellate courts will presume that the jury resolved any conflicting inferences in favor of the verdict; however, Appellant now asks this Court to do just the opposite by interpreting "I'm not sure" to mean "it didn't happen." Crystal Ann's testimony is not inconsistent, and this Court should not assume otherwise.

Further, Ms. Zamarron testified as to the emotional changes in Crystal Ann during the relevant time period, specifically noting that Crystal Ann starting acting out against Appellant. R.R. Vol. 3, p. 111. Finally, the Appellant himself did not

---

things more than once? And by these things, I mean the things on my diagram here, putting his penis inside of your vagina and putting his fingers inside of your vagina?
A. Yes.
Q. Did he do that throughout the whole time he was on Rhine Road?
A: Yes.
R.R. Vol. 3, p. 78.

And later on cross-examination
Q. [Crystal Ann], do you remember when [Appellant] stopped?
A. When he moved out.
R.R. Vol. 3, p. 95.

even deny the sexual assault when confronted by law enforcement, but instead stated that he "could not remember" and conceded that "[i]f I did hurt her on accident, I'm sorry." *See* State's Exhibit 6. This is clearly more than a mere "modicum" of evidence. While Appellant argues that one must discount Crystal Ann's testimony as it was inconsistent with her mother, the factfinders clearly disagreed. The jurors evaluated the credibility of Crystal Ann's testimony and the weight of the evidence, and, after doing so, assessed the guilt of the Appellant. Just because that assessment reached a result different from what Appellant hoped for does not make it invalid. The jury was free to accept some testimony and reject other testimony, in whole or in part, and the Court should defer to the jury's apparent resolution of any conflicting inferences in the evidence in favor of the verdict. *See Kiffe*, 361 S.W.3d at 108; *Margraves*, 34 S.W.3d at 919. Appellant's point of error two should be overruled.

### III. APPELLANT CANNOT RAISE AN ADDITIONAL CLAIM OF LEGAL AND FACTUAL SUFFICIENCY BASED ON THE DENIAL OF A DIRECTED VERDICT.

Appellant claims in his third point of error that he should also be granted relief as there was not enough evidence to survive his motion for directed verdict. *See* Appellant's Brief at 32. A motion for directed verdict is also a challenge to the legal sufficiency of the evidence. *Grayson v. State*, 82 S.W.3d 357, 358 (Tex. App.—Austin 2001)(no pet.). "We treat a point of error complaining about a trial

40

court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence." *Williams v. State*, 937 S.W.2d 479 (Tex. Crim. App. 1996) citing *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993). As this claim is an identical sufficiency claim to point of error three, it cannot be addressed as an additional point of error. As Appellant does not distinguish any different facts or law in support of his sufficiency claim as to point of error number three,[12] the State effectively addressed this claim in Section II, *supra*. Appellant's point of error three should be overruled.

---

[12] "Accordingly this third issue should be evaluated using the facts and law argued in issue 2 [sic] above." Appellant's Brief at 33.

41

# PRAYER

For the foregoing reasons, the State respectfully prays that Appellant's three points of error be overruled and that the judgment be affirmed in all respects.

Respectfully submitted,

/s/ Chari L. Kelly
Chari L. Kelly
Texas Bar. No. 24057939
Assistant Criminal District Attorney
Comal County
150 N. Seguin, Suite 307
New Braunfels, TX 78130
kellyc@co.comal.tx.us
(830) 221-1300
(830) 608-2008 (facsimile)

Attorney for the State

## CERTIFICATE OF SERVICE

I, Chari L Kelly, do hereby certify that a true and correct copy of this Brief for the State has been delivered to Appellant CHARLES VILLARREAL'S attorney of record in this matter:

Atanacio Campos
496 S. Castell Ave.
New Braunfels, Texas 78130
atanacio@aol.com

By electronically sending it to the above-listed email address through efile.txcourts.gov e-filing, this **18th of May, 2015**.


/s/ Chari L. Kelly
Chari L. Kelly

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Rule 9.4(i)(2)(B) and Rule 9.4(i)(3) of the Texas Rules of Appellate procedure that the instant brief is computer-generated using Microsoft Word and said computer program has identified that there are **7,797** words within the portions of this brief required to be counted by Rule 9.4(i)(1) & (2) of the Texas Rules of Appellate Procedure.

The document was prepared in proportionally-spaced typeface using Times New Roman 14 for text and Times New Roman 12 for footnotes.

/s/ Chari L. Kelly
Chari L. Kelly